**No. 25-13489-BB**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_________________

**UNITED STATES OF AMERICA,**
***Appellee*,**
**v.**
**KAROL TELLEZ DUARTE,**
***Appellant*.**

---

On appeal from the United States District Court
For the Middle District of Georgia
No. 3:24-cr-35-TES-CHW

---

# BRIEF OF APPELLANT KAROL TELLEZ DUARTE

---

Lynsey M. Barron
Ga. Bar No. 661005
BARRON WARD LLC
1800 Peachtree Rd. NE, Ste. 300
Atlanta, GA 30309
(404) 857-2282

*Counsel for Appellant Karol Tellez Duarte*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rule 26.1-1 to 26.1-3, Appellant states that the following people and entities have an interest in the outcome of this appeal:

1. Barron, Lynsey M., counsel for Appellant
2. Barrow, Charles – Attorney for Codefendant
3. Booker, C. Shanelle – former Acting U.S. Attorney
4. Brant, Charles Tyrone – Attorney for Codefendant
5. Camacho, Guillermo Jose Tovar – Codefendant
6. Campo-Paz, Karen A. – Codefendant
7. Conway, Byron L., Jr. – Ex. Dir., Federal Defender Program
8. Duarte, Karol Tellez – Defendant/Appellant
9. Gantt, E. Addison – Attorney for Codefendant
10. Keyes, William R. – U.S. Attorney
11. Leary, Peter D. – former U.S. Attorney
12. Lopez, Ricardo Ramon Rangel – Codefendant
13. Mendelsohn, Brian – Attorney for Codefendant
14. Morrill, Michael – Assistant U.S. Attorney
15. Morrison, Michael, Assistant U.S. Attorney

16. Rangel-Ochoa, Brayan Delexandero – Codefendant

17. Sanchez-Quintana, Carlos Alberto – Codefendant

18. Scheiber, Michelle L. – Assistant U.S. Attorney

19. Self, Hon. Tillman E., III – U.S. District Judge

20. Vasquez, Juanileidys Ochoa – Codefendant

21. Villamizar, Keyderman Jose Blanco – Codefendant

22. Villarroel, Douglas Rondon – Codefendant

23. United States of America – Appellee

24. Weigle, Hon. Charles H. – U.S. Magistrate Judge

25. Victim institutions:

    a. Adirondack Regional Federal Credit Union

    b. North Georgia Credit Union

    c. Norstate Federal Credit Union

    d. Educational Systems Federal Credit Union

    e. Andover Bank (ANDC)

    f. Five County Credit Union

    g. Penn East Federal Credit Union

    h. Del-One Federal Credit Union

    i. Shore United Bank (traded as Shore Bancshares, Inc.) (SHBI)

j. Erie Federal Credit Union

k. Pendleton Community Bank (PCB)

l. Park View Federal Credit Union

m. United Community Bank (UCB)

n. First People's Community Federal Credit Union

o. Saco & Biddeford Savings

p. Thomaston Savings Bank

q. Union Bank

The Appellant is currently incarcerated.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Karol Tellez Duarte contends that this Brief contains sufficient grounds to warrant reversal without oral argument, but should this Court believe that it could benefit from oral argument, Ms. Duarte respectfully requests that opportunity.

# TABLE OF CONTENTS

Certificate of Interested Persons ........................................................................ C-1

Statement Regarding Oral Argument ............................................................................ i

Table of Contents ........................................................................................................ ii

Table of Authorities ..................................................................................................... iii

Statement of Jurisdiction ............................................................................................. v

Statement of the Issues ................................................................................................ 1

Statement of the Case ................................................................................................... 2

I. Factual Background and Course of Proceedings Below.................................2

II. Standard of Review..........................................................................................9

Summary of the Argument..........................................................................................10

Argument ..................................................................................................................... 11

I. The District Court Erred in Applying a Guidelines Enhancement for Which Ms. Duarte Received No Advanced Notice........................................11

II. Ms. Duarte's Sentence, Which Was at the Top End of the Guidelines Range, Was Substantively Unreasonable.........................................................17

Conclusion ................................................................................................................... 21

Certificate of Compliance ........................................................................................... 22

Certificate of Service .................................................................................................. 23

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*National Cable & Telecommunications Ass'n v. Brand X Internet Services, et al.*,
545 U.S. 967 (2005) .................... 14

*United States v. Bakeas*,
987 F. Supp. 44 (D. Mass. 1997) .................... 21

*United States v. Bozza*,
132 F.3d 659 (11th Cir. 1998) .................... 17

*United States v. Carty*,
264 F.3d 191 (2nd Cir. 2001) .................... 20

*United States v. Davis*,
204 F.3d 1064 (11th Cir. 1999) .................... 19, 20

*United States v. Dupree*,
57 F.4th 1269 (11th Cir. 2023) .................... 9

*United States v. Francis*,
129 F. Supp. 2d 612 (S.D.N.Y. 2001) .................... 20

*United States v. Irey*,
612 F.3d 1160 (11th Cir. 2010) .................... 17, 19

*United States v. Jules*,
595 F.3d 1239 (11th Cir. 2010) .................... 11

*United States v. Plasencia*,
886 F.3d 1336 (11th Cir. 2018) .................... 11

*United States v. Pressley*,
345 F.3d 1205 (11th Cir. 2003) .................... 20

*United States v. Pugh*,
515 F.3d 1179 (11th Cir. 2008) .................... 9, 17

*United States v. Rodriguez*,
213 F. Supp. 2d 1298 (M.D. Ala. 2002) .................... 20

*United States v. Shazier*,
179 F.3d 1317 (11th Cir. 1999) .................... 16

*United States v. Snipes*,
611 F.3d 855 (11th Cir. 2010) .................... 17

*United States v. Stephens*,
699 F.2d 534 (11th Cir. 1983) .................... 21

*United States v. Stewart*,
590 F.3d 93 (2d Cir. 2009) ........................................ 11, 21

**Statutes**

18 U.S.C. § 1029 ........................................ *passim*
18 U.S.C. § 1349 ........................................ 2
18 U.S.C. § 3553 ........................................ 17
18 U.S.C. § 3582 ........................................ v
28 U.S.C. § 1291 ........................................ v
47 U.S.C. § 153 ........................................ v

**Rules**

Eleventh Circuit Rule 26.1-1, 26.1-3 ........................................ C1
Eleventh Circuit Rule 32-4 ........................................ 22
Fed. R. App. P. 4(b)(1)(A)(i) ........................................ v
Fed. R. App. P. 26.1 ........................................ C1
Fed. R. App. P. 32 ........................................ 22
USSG § 2B1.1 ........................................ *passim*
USSG § 2X1.1 ........................................ 3
USSG § 3E1.1 ........................................ 3
USSG § 4C1.1 ........................................ 3

## STATEMENT OF JURISDICTION

This Court has jurisdiction over Appellant Karol Tellez Duarte's appeal. On October 3, 2025, the district court entered judgement in Ms. Duarte's case (Dkt. 161), which was a final order that was appealable. *See* 28 U.S.C. § 1291 and 18 U.S.C. § 3582(b). Ms. Duarte filed a timely Notice of Appeal on October 6, 2025. (Dkt. 164.); *see* FED. R. APP. P. 4(b)(1)(A)(i).

## STATEMENT OF THE ISSUES

1. Did the district court violate Ms. Duarte's right to due process when it imposed a Sentencing Guidelines enhancement for which she lacked advanced notice?
2. Did the district court impose a procedurally and substantively unreasonable sentence by miscalculating the Guidelines, by relying on an illegal factor in giving her a harsh sentence, and by improperly weighing the relevant factors.

## STATEMENT OF THE CASE

### I. Factual Background and Course of Proceedings Below

On November 21, 2024, Appellant Karol Tellez Duarte was indicted for her role in a conspiracy to engage in a "jackpotting" scheme to steal money from federally-insured banks during a three-and-a-half month span in 2024. (Dkt. 1.) According to the indictment, "jackpotting" attacks involve the perpetrators removing the covering from Automated Teller Machines ("ATMs") and inserting a foreign device called a "Raspberry Pi" that reroutes wire transmissions between the machine and the bank so that the message can be manipulated to cause the ATM to dispense money. (*See* Presentence Investigation Report ("PSR") ¶ 7.)

Ms. Duarte was lured into participating in the scheme by her then-boyfriend and the lead defendant, Keyderman Jose Blanco Villamizar. (*See* Dkt. 145 at 1.) Villamizar and his gang travelled up and down the eastern part of the United States targeting ATM machines in relatively small towns and usually small credit unions or independent banks. According to Villamizar, those institutions were less sophisticated and generally easier to hack into. (*See* PSR ¶¶ 6, 12.) Ms. Duarte agreed to plead guilty on July 7, 2025 through a non-negotiated plea to bank fraud conspiracy in violation of 18 U.S.C. § 1349. (Dkt. 93.)

The U.S. Probation Office prepared three versions of the PSR. Initially, the PSR applied a base offense level of 7 under USSG § 2X1.1(a). (Dkt. 129 ¶ 24.) The PSR recommended a 14-level enhancement for the loss amount under USSG § 2B1.1(b)(1)(H) for a loss between $550,000 and $1,500,000 based on the total loss under the conspiracy of $1,435,980. It recommended a 2-level enhancement for there being 10 or more victim financial institutions under USSG § 2B1.1(b)(2)(A)(i); a 2-level enhancement under USSG § 2B1.1(b)(1)(B) & (C) for the scheme being sophisticated and for a substantial part of the scheme occurring outside the United States; a 3-level total reduction under USSG § 3E1.1(a) for acceptance of responsibility; and a 2-level reduction because Ms. Duarte has zero criminal history points under USSG § 4C1.1(a) and (b). (*Id.* ¶¶ 25-27, 33-35.) The PSR calculated a total offense level of 20, yielding an advisory Guidelines range of 33 to 41 months' imprisonment. (*Id.* ¶ 57.)

Ms. Duarte timely objected to several factual statements in the PSR, to the loss calculation, to the victim enhancement, and to the enhancement for the scheme either being sophisticated or otherwise involving conduct occurring substantially outside the United States. (*See* Dkt. 134.) She also objected that the PSR's failure to give Ms. Duarte a downward adjustment for playing a minor role, and she objected to the restitution calculation. (*Id.*) The Government filed objections to Ms. Duarte's objections. (Dkt. 135.)

While the Government did not submit any written objections of its own, the Probation Officer appears to have *sua sponte* revised the PSR the same day objections were due, adding a 2-level enhancement under USSG § 2B1.1(b)(11)(A)(i) and comment (n.10(A)) because the offense involved the possession or use of device-making equipment. (Dkt. 130 ¶ 28.) To support this enhancement, the PSR specifically referred to the use of a "foreign device installed inside ATMs and used to reroute network traffic between an ATM and the bank's services to fraudulently obtain money without authorization"—referring to the Raspberry Pi device. (*Id.*) This adjustment raised Ms. Duarte's advisory Guidelines range by roughly 25% to 41 to 51 months' imprisonment. (*Id.* ¶ 59.) In the final PSR, the Probation Office rejected all of Ms. Duarte's disputes, relying heavily on the Government's objections to Ms. Duarte's PSR Objections. (*See generally* Dkt. 143-1 (Addendum); Dkt. 143 (Final PSR).)

In her sentencing memorandum, Ms. Duarte challenged (among other things) the late addition of an enhancement for the use of a foreign device and the factual basis to support that enhancement. (Dkt. 145 at 10-13.) At sentencing, she argued that the definition referenced in the enhancement and its relation back to Section 1029 "specifically refer[s] to the obtaining of telecommunication services." (Dkt. 189 at 10.) The jackpotting scheme interfered with the wire messages between the ATM machine

and the bank in question, which does not qualify as a telecommunication service under the Communication Act of 1934. (*Id.*)

The Government called FBI Special Agent Matthew Winn to testify that the jackpotting crew relied on a Venezuela-based hacker to intercept the communications between the ATM machines and the bank. (*See id.* at 19-20.) He testified that the crew would place another device, a "Wi-Fi puck," on top of the ATMs that provided wireless service to the Raspberry Pi device, allowing it to operate. (*See id.* at 15.) As to Ms. Duarte's role, Agent Winn testified that she was a driver, kept a ledger, and took videos and pictures of banks and ATMs that she shared with other members of the crew. (*Id.* at 29, 34, 45.) Finally, he testified that the devices the crew installed in the ATM machines can also be used as skimming devices that will feed the banking information of any customer that comes to bank after the device is installed back to the hacker. (*Id.* at 32-33.)

On cross-examination, Agent Winn conceded that he could not remember any large transactions from Ms. Duarte's bank account. (*See id.* at 58-59.) The lavish apartment was in Villamizar's name, and as to Ms. Duarte's car, Villamizar was the co-buyer. (*Id.* at 59.) Although Agent Winn testified on direct that Ms. Duarte actually "assisted" with installing the jackpotting devices onto the ATM machines, he conceded that the only evidence he really had of her "assisting" was, on one occasion that

he could remember, handing the jackpotting device to a crew member who was standing outside her car, and standing around doing nothing when other crew members were working on the machine and extracting money. (*See id.* at 59-61.)

Arguing in favor of the enhancement for the possession or use of device-making equipment, the Government stated for the first time that it believed the PSR cited the wrong Guidelines provision, that it should have listed an enhancement for USSG § 2B1.1(b)(11)(B) instead of USSG § 2B1.1(b)(11)(A)(i) because the offense involved "the production or trafficking of any (i) unauthorized access device or counterfeit access device," based on the testimony from Agent Winn that the installed device could also be used as a skimmer, and because the crew used a "Wi-Fi puck," which was a "telecommunication hotspot" needed to operate the device. (*Id.* at 79-81.)

Ms. Duarte objected to relying on this alternate ground for enhancing her sentence because she was not given any notice that this would be the Guidelines enhancement might be implicated and was unprepared to address whether it applied. (*Id.* at 81-82.) She noted that the Government never objected to the PSR as written, and it never pointed out that it would be relying on the skimming theory or the "Wi-Fi puck" to anchor a definition of "access device," or that it would be arguing for the enhancement under a different Guidelines subsection than the one noted in the PSR. (*Id.* at 82.) She was completely caught off guard because, as her lawyer explained, "what I'm

on notice to be prepared to argue today is whether the Raspberry Pi is a device-making equipment, as defined by statute, as it is defined in the commentary. And so if the Court concludes that this applies by some other means, then my objection is going to be one of due process and notice." (*Id.*) The court asked Ms. Duarte's counsel whether Agent Winn's testimony about the Raspberry Pi being capable of functioning as a scanner nonetheless met the qualifications for USSG § 2B1.1(b)(11)(B),[1] and she stated that she was "flying blind" and "completely unprepared to answer that question" because she was not put on notice that she needed to be prepared to discuss a different application of the Guidelines. (*See id.* at 84-89.) Acknowledging that Ms. Duarte should have received notice and did not, the court applied the enhancement anyway. (*Id.* at 85.)

The court granted Ms. Duarte's request for a minor role reduction. (*Id.* at 95.) The court calculated the total offense level to be 23 with a criminal history category of 1, which yielded an advisory Guidelines range of 46 to 57 months' imprisonment. (*See id.* at 95.)

[1] As argued below, a skimmer is not an "access device." Ms. Duarte's counsel would have been able to argue that had she been given adequate notice to come prepared to explain why.

As to what sentence would be sufficient but not greater than necessary, Ms. Duarte's attorney relied on data from the U.S. Sentencing Commission's Interactive Data Analyzer to compare sentence lengths by district for various crimes. (*See id.* at 97.) The average sentence length nationwide for people in her criminal history category who commit fraud and are sentenced under USSG § 2B1.1 was 30 months' imprisonment; the average length in the Eleventh Circuit is 38 months; and the average in the Middle District of Georgia is 48. (*Id.* at 98-99; *see also* Dkt. 159 (Defendant's sentencing exhibit).) She also argued that Ms. Duarte accepted responsibility early and withdrew her motion to dismiss challenging the way the case was charged. (*Id.* at 99.) Ms. Duarte asked the court to consider the fact that her son was killed while she was in pretrial detention and she was not permitted to attend his funeral. (*Id.* at 99-100.) Ms. Duarte further noted that she would spent time in immigration custody prior to her deportation, time for which she will not be able to get credit. (*Id.* at 100.) Because of her immigration status, she would not be eligible—like many low-level fraud defendants—for designation at a minimum security facility or a camp. (*Id.*) Finally, she argued that her background suggests this was completely aberrant behavior. (*Id.*) She was a nurse in Columbia and still has an active nursing license, so her risk of recidivating is very low. (*Id.*)

The judge sentenced Ms. Duarte at the upper end of the Guidelines range—57 months' imprisonment. (*Id.* at 109.) The court was concerned about the amount of money involved and the number of thefts that occurred. (*Id.* at 107-08.) The court said further: "[I]t's not lost on me the country that did it, the country that targeted us. And Lord knows where that money went when it got back to Venezuela, what it did to people in Venezuela, of how it hurt them." (*Id.*) The court noted that Ms. Duarte "should have been deported ten years ago," and it was not persuaded by the fact that she will spend time in immigration custody. (*Id.* at 108.) The court ordered Ms. Duarte to pay $1,435,980 to the victim institutions as mentioned in the PSR. (*Id.* at 109.)

Ms. Duarte is currently incarcerated.

## II. <u>Standard of Review</u>

- This Court reviews a district court's interpretation and application of the U.S. Sentencing Guidelines *de novo*. *United States v. Dupree*, 57 F.4th 1269, 1272 (11th Cir. 2023).
- This Court reviews the substantive reasonableness of a defendant's sentence for abuse of discretion. *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008).

## SUMMARY OF THE ARGUMENT

After her decision to plead guilty to participating in a bank fraud conspiracy, Ms. Duarte faced a sentencing hearing believing she knew what possible bases might exist to enhance her sentence. She was wrong. Despite never objecting, clarifying, or attempting to supplement the PSR, the Government pursued a completely different Guidelines enhancement for which Ms. Duarte received no notice. Even though it acknowledged that Ms. Duarte lacked proper notice, the district court applied the enhancement nonetheless.

The district court then compounded its error by sentencing her at the highest end of the advisory Guidelines range by improperly balancing the factors it was allowed to consider and by relying heavily on a forbidden factor. Because the court committed procedural error in miscalculating the Guidelines and substantive error by not properly weighing the permitted factors, this Court should reverse Ms. Duarte's 57-month sentence and remand for resentencing.

# ARGUMENT

## I. The District Court Erred in Applying a Guidelines Enhancement for Which Ms. Duarte Received No Advanced Notice.

At Ms. Duarte's sentencing hearing, the district court applied a Sentencing Guidelines enhancement for which she received no advanced notice. This was error and it violated Ms. Duarte's right to due process.

Criminal defendants have a due process right to receive adequate notice of and an opportunity to challenge any fact used to support a criminal penalty. *See United States v. Jules*, 595 F.3d 1239, 1243 (11th Cir. 2010). While the critical due process interest during the sentencing phase is the right "not to be sentenced on the basis of invalid premises or inaccurate information," *see id.*, the primary concern is that the district court have access to sufficient information "to enable it to exercise its sentencing discretion in an enlightened manner." *See United States v. Stephens,* 699 F.2d 534, 537 (11th Cir. 1983).

Federal Rule of Criminal Procedure 32 requires the PSR to identify all potentially relevant Guidelines and the factual bases to support them, but district courts are not bound by those recommendations. *See United States v. Plasencia*, 886 F.3d 1336, 1343 (11th Cir. 2018). So long as a defendant receives proper notice, a district court may even apply an enhancement that is not identified in the PSR. *Id.* Due process is satisfied when "the circumstances afford a defendant notice that he engaged in

conduct that may result in the applications of a Guidelines enhancement" even if the defendant is not given advance notice that the court is considering the enhancement, as "the Guidelines themselves provide adequate notice." *Id.* at 1344.

Here, the PSR included a late amendment recommending a 2-level enhancement under USSG § 2B1.1(b)(11)(A)(i), which applies "[i]f the offense involved . . . the possession or use of any . . . device-making equipment." The Guidelines commentary explains that the term "device-making equipment . . . has the meaning given that term in 18 U.S.C. § 1029(e)(6); and . . . includes . . . any hardware or software that has been configured as described in 18 U.S.C. § 1029(a)(9); and . . . a scanning receiver referred to in 18 U.S.C. § 1029(a)(8)." USSG § 2B1.1(b)(11)(A)(i) and cmt. n. 10(A). To support this enhancement, the PSR specifically referred to the use of a "foreign device installed inside ATMs and used to reroute network traffic between an ATM and the bank's services to fraudulently obtain money without authorization"—referring to the Raspberry Pi device. (Dkt. 130 ¶ 28.)

The Government never objected or sought to clarify that it believed the enhancement applied under a different factual or legal basis. Indeed, until the Government changed its position in the middle of the sentencing hearing, Ms. Duarte did not have any reason to believe this Guideline might be applied for a reason other than that stated in the PSR and agreed to by the Government.

Believing that the late-added enhancement outlined in the PSR was the enhancement she would have to argue at sentencing, Ms. Duarte challenged its application in her sentencing memorandum. (*See* Dkt. 145.)[2] She argued that the Raspberry Pi device failed to meet the threshold requirement of being "device-making equipment" because it is not "equipment, mechanism, or impression designed or primarily used for ***making*** an access device or a counterfeit access device." 18 U.S.C. § 1029(e)(6) (emphasis added). To be clear, the enhancement refers not to an access device itself, but for something used to make access devices. *See id.* The PSR did not explain, nor is it even fathomable, how the device in question here was designed or used to "mak[e]" anything. It intercepted and rerouted information, but nothing in the discovery showed that it made any access device.

Second, even if it was device-making equipment, it would have to target hardware or software that "has been configured to insert or modify telecommunication identifying information associated with or contained in a telecommunications instrument so that such instrument may be used to obtain telecommunications service without authorization." *See* 18 U.S.C. § 1029(a)(9). That statute cross-references the

---

[2] Ms. Duarte did not file her sentencing memorandum under seal, but the court clerk placed it under seal anyway and a file-stamped copy is not available on the docket. As a result, the version of this document included in Ms. Duarte's appendix does not have a file stamp at the top.

Communications Act of 1934 to define "telecommunications service" as "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available to the public, regardless of the facilities used." 18 U.S.C. § 1029(e)(9); 47 U.S.C. § 153(53). Providers of "telecommunications service" are subject to common-carrier regulation and other highly regulated aspects of consumer communication. *See National Cable & Telecommunications Ass'n v. Brand X Internet Services, et al.*, 545 U.S. 967, 973-75 (2005).

Nothing in the how the Raspberry Pi device worked could possibly be construed as obtaining "telecommunications service." There is no communications service offered to the public for a fee that the device is attempting to obtain. Even to the extent wired communication between the ATM and the bank could be deemed "telecommunications service," the PSR described the foreign device as one that "intercepts" and "manipulates" that service, not one that *obtains* the service. (*See* PSR ¶ 7.)

Realizing that Ms. Duarte was right, the Government abruptly shifted positions at sentencing and claimed that—even though it never objected or sought to clarify the PSR—the Guidelines provision the PSR relied on "should have been uppercase 'B'," meaning USSG § 2B1.1(b)(11)(B) instead of USSG § 2B1.1(b)(11)(A)(i). (*See* Dkt. 189 at 79-80.) That provision applies if the offense involved "the production or trafficking of any . . . unauthorized access device or counterfeit access device, or . . .

authentication feature." USSG § 2B1.1(b)(11)(B). The Government relied on testimony from Agent Winn that the installed device could be used as a skimmer and that the crew used a "Wi-Fi puck," which was a "telecommunication hotspot" needed to operate the device. (*Id.* at 79-81.)

Ms. Duarte's attorney was caught completely flat-footed with no opportunity to research that provision or how it might apply. (*Id.* at 81-82.) The Government never gave notice that it might rely on an alternate "skimmer" theory or on the "Wi-Fi puck" (which device was not discussed in any of the discovery Ms. Duarte recalls receiving). (*See id.* at 82.) When asked by the court whether she agreed that the testimony about the Raspberry Pi being capable of functioning as a scanner device nonetheless met the qualifications for USSG § 2B1.1(b)(11)(B), Ms. Duarte's counsel was unable to answer because she had not researched the question. (*Id.* at 84.) The court admitted the lack of notice problem but applied the enhancement anyway. (*Id.* at 85.)

Now that she has had an opportunity to research the question properly, Ms. Duarte *still* believes the court committed error even aside from the due process problem. The Government's theory, and the court's reliance, was on the basis of the Raspberry Pi device being capable of being used as a "skimmer," which the Government argued was an "unauthorized access device" as that term is defined in 18 U.S.C. § 1029(e)(3). *See* USSG § 2B1.1(b)(11)(B) and cmt. n. 10(A) (defining "unauthorized

access device"). Such device is "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud," with the term "access device" being further defined as "any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)." 18 U.S.C. § 1029(e)(1) and (3). While a credit card may be an access device, a credit card skimmer simply does not meet this definition.

Contrast this case with *Shazier,* in which this Court rejected the defendant's argument that there was a due process error in not informing him of the factual basis for a Guidelines enhancement. *United States v. Shazier*, 179 F.3d 1317, 1320 (11th Cir. 1999). There, the defendant's counsel was provided a copy of the PSR upon which the enhancement was based and objected to that enhancement. *Id.* Here, Ms. Duarte was never given any notice that a different application of the Guidelines would be considered until the words were literally coming out of the prosecutor's mouth. Contrast this case also with *Bozza*, in which the PSR put the defendant on notice that

his sentence could be enhanced pursuant to a Guideline. *See United States v. Bozza*, 132 F.3d 659, 661 (11th Cir. 1998).

Because Ms. Duarte did not receive proper notice that the district court might enhance her sentence for any ground other than stated in the PSR, this Court should reverse.

## II. Ms. Duarte's Sentence, Which Was at the Top End of the Guidelines Range, Was Substantively Unreasonable.

In reviewing a federal sentence, this Court examines whether it is both procedurally and substantively reasonable, setting aside those sentences that are not reasonable. *United States v. Irey*, 612 F.3d 1160, 1165, 1193 (11th Cir. 2010). In reviewing the reasonableness of a sentence, this Court first asks whether the district court committed a procedural error, such as improperly calculating the Guidelines range, treating the Guidelines as mandatory, or failing to consider the factors delineated under 18 U.S.C. § 3553(a). *See United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008). If this Court is satisfied that there was no procedural error, it will then ask whether the sentence was substantively reasonable under the totality of the circumstances. *See id.*

While this Court will not second-guess how the district court weighs the §3553(a) factors, this Court will still ask whether the sentence is reasonable given all the circumstances. *See United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010). The

district court can thus abuse its discretion by balancing the relevant factors unreasonably, such as (1) failing to consider relevant factors that are due significant weight, (2) giving significant weight to a factor that is improper or irrelevant, or (2) committing a clear error of judgment when considering the proper factors. *See Irey*, 612 F.3d at 1189, 1193.

For the reasons outlined in Section I of this brief, Ms. Duarte contends that the district court committed procedural error by improperly calculating the Guidelines range. She should not have been levied a 2-level enhancement under USSG § 2B1.1(b)(11)(B). Without that enhancement, her total offense level would have been a level 21, which would have yielded an advisory Guidelines range of 37 to 46 months' imprisonment rather than 46 to 57 months. If still sentenced at the high end of the Guidelines range, her sentence would have been roughly 20% lower than it ended up being.

But the district court should never have sentenced her at the high end of the Guidelines range, regardless of what that range ended up being, and so its decision to do so led to a substantively unreasonable sentence. The district court cited two reasons for imposing a high-end sentence: the amount of money and number of thefts involved, and the fact that some of the money went to Venezuela and "Lord knows where that money went when it got back to Venezuela, what it did to people in

Venezuela, of how it hurt them." (Dkt. 189 at 107-08.) First, as to the amount of money and number of thefts, the district court gave far too much weight to this factor, using it to justify a high-end sentence when the Guidelines range itself already reflected consideration of this factor. *See Irey*, 612 F.3d at 1189, 1193.

But more concerning was the district court's reliance on the Venezuelan connection as a reason to impose such a significant sentence. There was absolutely *no* evidence in the record to support the judge's inference that just because the money went to a person who lived in Venezuela that it hurt people who live in Venezuela. There was nothing before the court that the recipient of the money in Venezuela was a particularly dangerous man, involved in acts of terrorism or drug trafficking, or would commit other bad conduct that might cause harm to the Venezuelan people or threaten United States interests—nor had the Government even argued that was a relevant data point, which surely it would have done if there were concerns that the money from this scheme was being used to perpetrate harm in Venezuela.

This was a completely improper factor for the court to consider. Relying on nothing more than the nationality of a codefendant, the district court drew all sorts of improper conclusions about the parade of horribles the codefendant would be perpetrating with his share of the proceeds *simply because he is Venezuelan*. *See United*

*States v. Davis*, 204 F.3d 1064, 1066 (11th Cir. 1999) (noting that nationality is a "forbidden" factor in the court's calculation of a reasonable sentence).

In addition to giving too much weight to those factors, the district court also gave too little weight to factors that were entitled to substantial consideration. *See Irey*, 612 F.3d at 1189. Ms. Duarte was a defendant without so much as a parking ticket on her record despite having lived in the United States for over ten years. (PSR ¶ 50.) She was lured into participation in this scheme, like many women who find themselves on the wrong end of a criminal indictment, through her romantic partner, the lead defendant in this case. (*See* Dkt. 145 at 13.) The district court did not consider *at all* the horrific punishment Ms. Duarte endured while in pretrial custody when the U.S. Marshal Service refused to allow her to attend the funeral of her son and grieve properly as every mother is entitled. Indeed, it does not appear that the court considered this circumstance at all.

This Court has concluded that sentencing courts may consider unusually harsh conditions of confinement when deciding to impose a less significant sentence than the defendant might otherwise receive. *See United States v. Pressley*, 345 F.3d 1205, 1218-19 (11th Cir. 2003). And other courts have agreed. *See, e.g.*, *United States v. Carty*, 264 F.3d 191 (2nd Cir. 2001); *United States v. Rodriguez*, 213 F. Supp. 2d 1298, 1303 (M.D. Ala. 2002); *United States v. Francis*, 129 F. Supp. 2d 612, 616 (S.D.N.Y. 2001);

*United States v. Bakeas*, 987 F. Supp. 44, 50 (D. Mass. 1997). Such harsh conditions are appropriate to consider when fashioning an appropriate sentence because "the punitive aspects of the defendant's confinement are increased and the deterrent effect of the defendant's confinement is also increased. *See United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009).

Because the district court considered an improper factor and unreasonable balanced the factors it was allowed to consider, Ms. Duarte's 57-month sentence is substantively unreasonable.

## CONCLUSION

For the reasons stated herein, Appellant Karol Tellez Duarte respectfully requests that this Court reverse her sentence and remand for resentencing.

Respectfully submitted,

*s/ Lynsey M. Barron*
Lynsey M. Barron

*Attorney for Appellant Karol Tellez Duarte*

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable type-volume limitation under Rule 32(a)(7) of the Federal Rules of Appellate Procedure and 11th Circuit Rule 32-4. According to the word count in Microsoft Word 2010, the relevant parts of this brief contain 4,745 words. This brief complies with the applicable type-style requirements limitation under Rule 32 of the Federal Rules of Appellate Procedure. I prepared this brief in a proportionally spaced Goudy Old Style 14-point font or, for headings, with a larger point size.

*s/ Lynsey M. Barron*
Lynsey M. Barron

*Attorney for Appellant Karol Tellez Duarte*

## CERTIFICATE OF SERVICE

On January 15, 2026, I e-filed this brief with the Court via CM-ECF, which will serve all attorneys of record.

s/ *Lynsey M. Barron*
*Lynsey M. Barron*

*Attorney for Appellant Karol Tellez Duarte*