# 25-13489-BB

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KAROL TELLEZ DUARTE,

Defendant-Appellant.

On Appeal from the United States District Court
For the Middle District of Georgia, Athens Division
District Court No. 3:24-cr-00035-TES-CHW-2

**BRIEF OF APPELLEE**

WILLIAM R. KEYES
United States Attorney

MICHELLE L. SCHIEBER
Assistant U.S. Attorney

Attorneys for Appellee

300 Mulberry St., Suite 400
P.O. Box 1702
Macon, Georgia 31202
(478) 752-3511
mikki.schieber@usdoj.gov

## CERTIFICATE OF INTERESTED PERSONS

In compliance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-5, the undersigned counsel of record certifies that the following parties have, or may have had, an interest in the outcome of this case.

Barron, Lynsey – Attorney for Defendant-Appellant;

Barrow, Charles – Attorney for Co-defendant;

Booker, C. Shanelle – former Acting United States Attorney, Middle District of Georgia;

Brant, Charles Tyrone – Attorney for Co-defendant;

Camacho, Guillermo Jose Tovar – Co-defendant;

Campo-Paz, Karen Anailith – Co-defendant;

Conway, Byron L., Jr. – Executive Director, Federal Defenders of the Middle District of Georgia, Inc.;

Duarte, Karol Tellez – Defendant-Appellant;

Gantt, E. Addison – Attorney for Co-defendant;

Keyes, William R. – United States Attorney, Middle District of Georgia;

Leary, Peter D. – former United States Attorney, Middle District of Georgia;

Lopez, Ricardo Ramon Rangel – Co-defendant;

Mendelsohn, Brian – Attorney for Co-defendant;

Morrill, Michael – Assistant United States Attorney, Middle District of Georgia;

Morrison, Mike – Assistant United States Attorney, Middle District of Georgia;

Mote, Faith – Attorney for Co-defendant;

Rangel-Ochoa, Brayan Delexandro – Co-defendant;

Sanchez-Quintana, Carlos Alberto – Co-defendant;

Schieber, Michelle L. – Assistant United States Attorney, Middle District of Georgia;

Self, Tilman E., III – Judge, United States District Court, Middle District of Georgia;

Vasquez, Juanileidys Ochoa – Co-defendant;

Villamizar, Keyderman Jose Blanco – Co-defendant;

Villarroel, Douglas Rondon – Co-defendant;

Weigle, Charles H. – United States Magistrate Judge, Middle District of Georgia;

The following victims have been identified:

| **Public Traded Company** | **Stock Symbol** |
| --- | --- |
| Andover Bank,<br>Conneaut, OH<br>Geneva, OH<br>Jefferson, OH | **ANDC** |
| Aroostook Savings and Loan<br>Presque Isle, ME | |
| Clearview Federal Credit Union<br>McKees Rocks, PA | |
| Del-One Federal Credit Union<br>Dover, DE<br>Milford, DE<br>Smyrna, DE | |
| Educational Systems<br>Derwood, MD<br>Forestville, MD<br>Silver Spring, MD<br>Rockville, ME | |
| Empeople Credit Union<br>Moline, IL | |
| Erie Federal Credit Union<br>Erie, PA | |

First People's Community Federal Credit Union
Cumberland, MD

Five County Credit Union
Brunswick, ME
Rockland, ME
Yarmouth, ME

Norstate Federal Credit Union
Van Buren, ME

North Georgia Credit Union
Hartwell, GA

Park View Federal Credit Union
Broadway, VA
Harrisonburg, VA

Pendleton Community Bank **PCB**
Harrisonburg, VA
Staunton, VA

Penn East Federal Credit Union
Scranton, PA
South Abington Township, PA

Saco & Biddeford Savings
Biddeford, ME

Shore United Bank **SHBI**
Lothian, MD

Thomaston Savings Bank
Middlebury, CT

Union Bank **UNB**
Morrisville, VT

United Community Bank **UCB**
Boiling Springs, SC
Columbia, SC
Greenville, SC
Travelers Rest, SC.

s/Michelle L. Schieber
Assistant United States Attorney
Georgia Bar No. 629188

## STATEMENT REGARDING ORAL ARGUMENT

The Appellee submits that oral argument in this case will not significantly further the Court's decisional process because the issues have been adequately addressed by the parties in their briefs.

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................... C-1

STATEMENT REGARDING ORAL ARGUMENT .......................................... i

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iv

STATEMENT OF JURISDICTION .................................................................. vi

STATEMENT OF THE ISSUES ...........................................................................1

STATEMENT OF THE CASE ..............................................................................2

A. Statement of the Facts and Procedural History ..................................3

1. Duarte's Indictment and Guilty Plea.............................................3

2. Duarte's Presentence Investigation Reports and Objections.......4

3. Duarte's Sentencing ........................................................................11

B. Statement of the Standard of Review ...............................................18

SUMMARY OF THE ARGUMENT ..................................................................20

ARGUMENT AND CITATION OF AUTHORITY .........................................21

A. Duarte received sufficient notice of the two-level enhancement for possession or use of device-making equipment and the enhancement was supported by the evidence. ................................22

1. Duarte received sufficient notice of the two-level enhancement for possession or use of device-making equipment. ....................22

2. The district court did not err in applying the enhancement......27

B. Duarte has failed to show that the 57-month sentence imposed by the district court was procedurally or substantively unreasonable. ....................................................................................................29

CONCLUSION ....................................................................................37

CERTIFICATE OF COMPLIANCE ..................................................38

CERTIFICATE OF SERVICE ..........................................................39

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Gall v. United States*,
552 U.S. 38 (2007) .......... 18, 19

*United States v. Davis*,
204 F.3d 1064 (11th Cir. 1999) .......... 33-34

*United States v. Dupree*,
57 F.4th 1269 (11th Cir. 2023) .......... 23

*United States v. Kuhlman*,
711 F.3d 1321 (11th Cir. 2013) .......... 32

*United States v. Louis*,
559 F.3d 1220 (11th Cir. 2009) .......... 19

*United States v. Melgen*,
967 F.3d 1250 (11th Cir. 2020) .......... 20

*United States v. Oudomsine*,
57 F.4th 1262 (11th Cir. 2023) .......... 19

*United States v. Plasencia*,
886 F.3d 1336 (11th Cir. 2018) .......... 26, 27

*United States v. Pugh*,
515 F.3d 1179 (11th Cir. 2008) .......... 19

*United States v. Robertson*,
493 F.3d 1322 (11th Cir. 2007) .......... 19

**Federal Statutes**

18 U.S.C. § 1029(a)(8) .......... 8, 23

18 U.S.C. § 1029(a)(9) .......... 8, 11, 22

18 U.S.C. § 1029(e)(1) .......... 14

18 U.S.C. § 1029(e)(6) .......... 8, 10, 22

18 U.S.C. § 1029(e)(8) .......... 8, 15-16, 17, 23, 24, 25, 28, 29
18 U.S.C. § 1344 .......... 3
18 U.S.C. § 1349 .......... 3
18 U.S.C. § 3231 .......... vi
18 U.S.C. § 3553(a) .......... 18, 19, 20, 30, 31
18 U.S.C. § 3553(a)(1) .......... 34
18 U.S.C. § 3553(a)(2)(A) .......... 34-35
18 U.S.C. § 3661 .......... 31
18 U.S.C. § 3742(a) .......... vi
28 U.S.C. § 1291 .......... vi

**Federal Rules**

Federal Rule of Appellate Procedure 4(b)(1)(A)(i) .......... vi
Federal Rule of Appellate Procedure 26.1 .......... C-1
Federal Rule of Appellate Procedure 32(a)(5) .......... 38
Federal Rule of Appellate Procedure 32(a)(6) .......... 38
Federal Rule of Appellate Procedure 32(a)(7)(B) .......... 38
Federal Rule of Appellate Procedure 32(f) .......... 38

**Federal Sentencing Guidelines**

U.S.S.G. § 2B1.1(b)(1)(B) .......... 5, 6
U.S.S.G. § 2B1.1(b)(1)(H) .......... 4
U.S.S.G. § 2B1.1(b)(11) .......... 16, 23
U.S.S.G. § 2B1.1(b)(11)(A)(i) .......... 1, 7, 8, 9, 14, 15, 20, 22, 23, 27, 28, 29
U.S.S.G. § 2B1.1(b)(11)(B)(i) .......... 1, 14, 15, 20, 27
U.S.S.G. § 2B1.1 cmt. n. 10(A) .......... 7, 8, 15, 22, 23, 25, 28
U.S.S.G. § 2B1.1(b)(C) .......... 5
U.S.S.G. § 3B1.2 .......... 7

## STATEMENT OF JURISDICTION

This appeal is from the sentence imposed following a guilty plea in the United States District Court for the Middle District of Georgia. The district court had subject matter jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction over the final decision of the district court pursuant to 28 U.S.C. § 1291 and authority to review the sentence pursuant to 18 U.S.C. § 3742(a). The district court imposed the sentence on October 1, 2025, and entered judgment on October 3, 2025. Duarte filed a timely notice of appeal on October 6, 2025. Fed. R. App. P. 4(b)(1)(A)(i).

## STATEMENT OF THE ISSUES

A. In anticipation of sentencing, Probation recommended, among other things, that Duarte receive a two-level enhancement because her offense of conviction—conspiracy to commit bank fraud—involved the possession or use of any device-making equipment pursuant to U.S.S.G. § 2B1.1(b)(11)(A)(i). At the sentencing hearing, the United States maintained that Duarte's conduct merited the two-level enhancement, but argued that the court should apply U.S.S.G. § 2B1.1(b)(11)(B)(i), instead. The district court found that the use of a Raspberry Pi to reroute network traffic between the ATMs and the banks supported a two-level enhancement. The preliminary question presented is whether the district court applied the enhancement under U.S.S.G. § 2B1.1(b)(11)(B)(i)—as opposed to U.S.S.G. § 2B1.1(b)(11)(A)(i)—and, if so, whether doing so without notice prior to the sentencing hearing served to violate Duarte's due process rights. If there was no due process violation, the second question is whether the evidence supported a finding that the offense involved device-making equipment.

B. Duarte contends the district court relied on an illegal factor when it expressed concern that the proceeds of the bank thefts were going to

Venezuela and the district court unreasonably relied on the amount of money and the number of thefts undertaken by the conspirators in deciding the sentence to impose. The question presented is whether the district court properly weighed the relevant factors in deciding the sentence to impose and whether the 57-month sentence imposed by the court was procedurally and substantively reasonable.

## STATEMENT OF THE CASE

Karol Duarte was one of eleven people indicted after the FBI uncovered widespread instances of bank fraud carried out through a scheme known as jackpotting, in which the defendants targeted small banks and credit unions and committed malware attacks on their ATMs that would cause the ATMs to dispense large amounts of cash without linking the withdrawals to valid customer accounts. After Duarte admitted to her role in the jackpotting schemes, and pleaded guilty to conspiring to commit bank fraud, the district court sentenced her to serve 57 months in prison. She raises here two challenges to the sentence imposed.

## A. Statement of the Facts and Procedural History

### 1. Duarte's Indictment and Guilty Plea

In 2024, a federal grand jury sitting in the Middle District of Georgia charged Duarte, and multiple co-defendants, with conspiracy to commit bank fraud, bank fraud, and bank larceny. Doc. 60.[1] Without the benefit of a plea agreement, Duarte pleaded guilty to conspiring to commit bank fraud in violation of 18 U.S.C. § 1344 and 18 U.S.C. § 1349. Doc. 93; Doc. 176 at 7.[2] In her change of plea colloquy, Duarte admitted that she and her co-conspirators engaged in a jackpotting scheme[3] in which they physically

[1] References to the district court documents are indicated by "Doc." followed by the relevant docket number.
[2] References to the pages in the transcripts are to the page numbers generated by the district court's electronic filing system.
[3] The Final Presentence Investigation Report described "jackpotting" as follows:

> Jackpotting attacks are carried out when a subject gains access to an Automated Teller Machine (ATM) by entering through the ATM covering and housing using a skeleton key. After gaining access, the subject unplugs the ATM's network cable and installs a foreign device, often a Raspberry Pi, inside the ATM. Network traffic between the ATM and the bank's server is then routed through the installed device. When the bank denies a transaction and sends a denial message to the ATM, the installed device intercepts the message and manipulates the message into an approved transaction and issues dispensing commands to the ATM. The manipulated response results in the ATM dispersing

accessed fifty-one ATM machines and attached foreign devices to the machines that allowed another co-conspirator, a Venezuelan-based hacker, to remotely manipulate the machines in a way that caused the ATMs to dispense United States currency. Doc. 176 at 10. Through these cyber-attacks, Duarte and her co-conspirators stole approximately $1.47 million in United States currency. Doc. 176 at 10-11.

### 2. Duarte's Presentence Investigation Reports and Objections

#### a. The Draft Presentence Report

In anticipation of sentencing, the United States Probation Office prepared a Draft Presentence Investigation Report for the court that it docketed on August 27, 2025. Doc. 129. Probation started with a base offense level of seven and added fourteen levels based on a loss amount of $1,435,980. Doc. 129 ¶¶ 24-25 (citing U.S.S.G. § 2B1.1(b)(1)(H)). Probation added two levels because the offense involved ten or more victims, Doc. 129 ¶ 26 (citing U.S.S.G. § 2B1.1(b)(2)(A)(i)), and added another two levels

---

> funds without linking the withdrawals to a valid customer account.

Doc. 143 ¶ 7.

because the offense involved sophisticated means, Doc. 129 ¶ 27 (citing U.S.S.G. § 2B1.1(b)(1)(B) and U.S.S.G. § 2B1.1(b)(C)). Probation reduced Duarte's offense level by two for acceptance of responsibility and by one for timely entry of a guilty plea. Doc. 129 ¶¶ 33-34. As a zero-point offender, Duarte received an additional two-level reduction, which resulted in a total offense level of 20. Doc. 129 ¶¶ 35-36.

Duarte's criminal history score was zero, which resulted in a criminal history category of I. Doc. 129 ¶ 41. A total offense level of 20 and a criminal history category of I resulted in an advisory guidelines imprisonment range of 33 to 41 months. Doc. 129 ¶ 57. The maximum term of imprisonment for Duarte's offense was 30 years. Doc. 129 ¶ 56.

**b. Duarte's Objections to the Revised Report**

In a letter response dated September 9, 2025, and docketed September 10, 2025, Duarte raised both factual and legal objections to the Draft Report. Doc. 134. (USCA11 Doc. 16 at 50.) Duarte denied that any evidence placed her at the scene of any of the bank thefts, but conceded that she rode with a co-defendant, her boyfriend, Keyderman Villamizar, knowing he was intending to participate in the thefts. *Id.* at 1-2. In a related

argument, she objected to being held responsible for any loss amounts stemming from the thefts for which there was no evidence showing she was present when the thefts occurred. *Id.* at 2.

Duarte objected to Probation's decision to count each branch of a particular bank or credit union as a separate financial institution and asserted that the offense involved only nine financial institutions. *Id.* She maintained therefore that the two-level enhancement for an offense that involved ten or more victims was error. *Id.* Duarte also argued that the sentencing court had to look at whether her actions actually made the crime sophisticated and, when doing so here, the sophisticated means enhancement should not apply. *Id.* at 2-3.

Duarte also objected to a two-level enhancement under U.S.S.G. § 2B1.1(b)(1)(B) that was based on a finding that a substantial part of the conduct occurred outside the United States. *Id.* at 3. Duarte acknowledged that Villamizar confirmed that there was a hacker located in Venezuela or Columbia who did the encoding that would get the ATMs to fraudulently dispense the money. *Id.* She further argued, however, that the evidence did

not support a finding that it was reasonably foreseeable to her that someone in Venezuela was causing the thefts. *Id.* at 3-4.

Duarte maintained that she should receive a four-level minimal participant reduction under U.S.S.G. § 3B1.2 because she had no role other than being merely present, except that on one occasion she handed the jackpotting device to a member of the crew. *Id.* Duarte objected to the loss amount attributed to her and argued that she should only be accountable for restitution in the amount of $562,900. *Id.*at 5. Based on these arguments, Duarte maintained that her adjusted offense level should be fourteen and her advisory guidelines sentencing range should be fifteen to twenty-one months' imprisonment. *Id.*

### c. The Revised Draft Presentence Report

On September 10, 2025, Probation filed a Revised Draft Report that differed from the Draft Report only by adding a two-level increase because the offense involved the use of a foreign device inside the ATMs, which was then used to reroute network traffic between the ATMs and the banks' services. Doc. 130 ¶ 28 (citing U.S.S.G. § 2B1.1(b)(11)(A)(i) and cmt. n.10(A)).

This addition resulted in a total offense level of 22, Doc. 130 ¶ 38, and an advisory guidelines imprisonment range of 41 to 51 months, Doc. 130 ¶ 59.

Specifically, the Revised Report explained the newly added two-level specific offense characteristic as follows:

> The offense involved the use of a foreign device installed inside ATMs and used to reroute network traffic between an ATM and the bank's services to fraudulently obtain money without valid authorization. Therefore, since the offense involved the possession or use of any device-making equipment, which includes any hardware or software configured as described in 18 U.S.C. § 1029(a)(9)[1], the offense level is increased by two levels. USSG §2B1.1(b)(11)(A)(i) and comment.(n.10(A)).[4]

Doc. 130 ¶ 28. In the footnote within paragraph 28, Probation explained 18 U.S.C. § 1029(a)(9) as follows:

> 18 U.S.C. § 1029(a)(9) describes hardware or software configured to insert or modify telecommunication identify [sic] information associated with or contained in a telecommunications instrument so that such instrument may be used to obtain telecommunications service without authorization.

Doc. 130 ¶ 28 n.1.

---

[4] As relevant here, § 2B1.1(b)(11)(A)(i) provides, "If the offense involved (A) the possession or use of any (i) device-making equipment . . . increase by **2** levels." Application Note 10(A) defines "device-making equipment," as follows: "(i) has the meaning given that term in 18 U.S.C. § 1029(e)(6); and (ii) includes (I) any hardware or software that has been configured as described in 18 U.S.C. § 1029(a)(9); and (II) a scanning receiver referred to in 18 U.S.C. § 1029(a)(8). 'Scanning receiver' has the meaning given that term in 18 U.S.C. § 1029(e)(8)."

### d. The United States' Response to Duarte's Objections

The United States responded on September 15, 2025, to Duarte's objections as though they were objections to the Revised Report. Doc. 135. (USCA11 Doc. 16 at 55.) Because Duarte's objections were in response to the Draft Report, and did not address the newly added two-level increase under U.S.S.G. § 2B1.1(b)(11)(A)(i), the United States did not discuss the newly-added increase in its responses to Duarte's objections.

### e. The Final Presentence Report

Probation filed the Final Presentence Report on September 24, 2025. Doc. 143. Probation again applied a base offense level of seven, added the fourteen-level increase because the loss amount was more than $550,000, added two levels because the offense involved more than ten victims, retained the two-level increase because a substantial part of the fraudulent scheme was committed outside the United States or the offense otherwise involved sophisticated means, and retained the two-level increase under U.S.S.G. § 2B1.1(b)(11)(A)(i) because the offense involved the use of a foreign device installed inside the ATMs. Doc. 143 ¶¶ 23-28. Probation thus retained the total offense level of twenty-two, which, when combined with a criminal

history category of I, resulted in an advisory guidelines sentencing range of 41 to 51 months. Doc. 143 ¶¶ 38, 59.

#### f. Duarte's Sentencing Memorandum

On September 28, 2025, Duarte submitted a sentencing memorandum. Doc. 145. (USCA11 Doc. 16 at 82.) In the memorandum, Duarte renewed or expanded on her previously stated objections to the PSR, *id.* at 4–10, advocated for a mitigating role reduction, *id.* at 12-13, and requested a sentence of time served, *id.* at 13–16. Duarte also set forth her objection to the newly added two-level enhancement because the offense involved the use of a foreign device installed inside ATMs that was used to reroute network traffic between the ATMs and the banks' services. *Id.* at 10–12.

Duarte objected to the two-level enhancement on several bases. First, Duarte argued that the Raspberry Pi that was used to manipulate the ATM machines did not fall within the definition set forth at 18 U.S.C. § 1029(e)(6) because it was not designed or used for making an access device or a counterfeit access device. Doc. 145 at 10. Second, Duarte argued that the Raspberry Pi did not operate to obtain telecommunications services without

authorization, as that term is defined at 18 U.S.C. § 1029(a)(9). Doc. 145 at 11–12.

### 3. Duarte's Sentencing

The parties appeared for sentencing on October 1, 2025. Doc. 189. At sentencing Duarte renewed her objection to the loss amount. Doc. 189 at 6. Duarte acknowledged that the requested reduction would not affect the fourteen-level enhancement in the guideline range, but preserved the objection insofar as it affected the restitution amount. Doc. 189 at 6-8. She also renewed her objection to the finding that there were ten or more victims and the finding that she used sophisticated means or that a substantial portion of the conduct occurred outside the United States. Doc. 189 at 8-9. Finally, she renewed the objection raised in the sentencing memorandum to the finding that the offense involved the possession or use of any device-making equipment. Doc. 189 at 10.

The United States called FBI Special Agent Matthew Winn to testify. Winn's testimony established that certain members of the jackpotting crew had skeleton keys that allowed them to open the top half (also known as the "top hat") of each of the ATMs they accessed. Opening the top hat allowed

them to access the ATM computer system. They would remove the network cable that provided connectivity between the ATM and the financial institution's server and plug the network cable into their own device (a Raspberry Pi[5]) and use the cable from their device to connect to the ATM. Doc. 189 at 14, 16.

The Raspberry Pi operated by intercepting the traffic between the ATM and the financial institution's server. The crew also used a Wi-Fi hotspot (sometimes referred to as a "puck"), to provide the cellular service needed to create the connection. A Venezuelan-based hacker, known as "The Engineer," was the person using the Wi-Fi hotspot to remotely access the Raspberry Pi. Doc. 189 at 15-16. After the Raspberry Pi was in place, a member of the crew would use a bank card to conduct a transaction on the ATM. Doc. 189 at 14. The transaction would go from the ATM, though the Raspberry Pi, to the financial institution's server. Doc. 189 at 14. "The Engineer" would use the Wi-Fi hotspot to remotely access the Raspberry Pi

---

[5] The manufacturer describes the Raspberry Pi as a "tiny, powerful $35 computer," that "has all the features you expect from a computer: wireless internet connectivity, HDMI ports to your monitors, and USB ports for your accessories, along with ample processing power and RAM for all your day-to-day use." Raspberry Pi, https://www.raspberrypi.com/for-home/(last visited Apr. 20, 2026).

and manipulate the message traffic between the ATM and the financial institution's server. Doc. 189 at 16. This would allow the crew on the ground to withdraw $500 to $800 at a time until the ATM was drained of its money. Doc. 189 at 21, 31.

Agent Winn more fully explained how the Raspberry Pi worked in this way:

> So, specifically, what they would do is the crew on the ground, after installing the device, the Raspberry Pi, would run a bank card like a legitimate customer and then try to run a transaction for a withdrawal of, say, $500. That message traffic, the request to do that withdrawal, would go from the ATM through the Raspberry Pi to the financial institution's server. The financial institution would deny that transaction and send a denial message back to the ATM. However, the Raspberry Pi would intercept that message, and The Engineer would hack the system to change that message to an approval message. So what the ATM actually receives is an approval message to dispense that $500.

Doc. 189 at 31. Winn also testified that the Raspberry Pi worked like a "skimmer" by skimming legitimate bank customers' information, thereby allowing "The Engineer to see all the message traffic between the ATM and the financial institution," which then allowed The Engineer to manipulate the messages. Doc. 189 at 32.

After Winn testified more fully as to how the loss amount was determined as to Duarte, how the number of victims was calculated, and how the evidence supported a finding either that a substantial part of the scheme was committed in Venezuela or the offense involved sophisticated means, the district court discussed with the parties each of Duarte's challenges to the enhancements. When the court asked the United States its position on the two-level enhancement under U.S.S.G. § 2B1.1(b)(11)(A)(i), the United States responded that the enhancement should have been given under U.S.S.G. § 2B1.1(b)(11)(B)(i), instead. Doc. 189 at 79–80. That section provides, "'If the offense involved (B) the production or trafficking of any (i) unauthorized access device or counterfeit access device . . . ' increase by **2** levels." Doc. 189 at 80 (quoting U.S.S.G. § 2B1.1(b)(11)(B)(i)). After quoting § 2B1.1(b)(11)(B)(i), the United States asserted, "That's what we have here, Your Honor. We have the testimony from Agent Winn. I think it's clear as day. It establishes that." Doc. 189 at 80.

In response, the court then queried whether the term "access device," as defined in 18 U.S.C. § 1029(e)(1) "suffices for the plus 2 here without referring back to the Telecommunications Act?" Doc. 189 at 80–81.

Specifically, the court referred to language in the statute that defined "access device" to include, among other things, any telecommunication device "that can be used to initiate a transfer of funds, other than a transfer originated solely by paper instrument." Doc. 189 at 81. The United States agreed that the devices used by the jackpotting crew fell within that definition. Doc. 189 at 81.

Duarte objected to the sudden shift from § 2B1.1(b)(11)(A)(i) to § 2B1.1(b)(11)(B)(i), maintaining that she was not on notice that the court would be considering a different guidelines provision, and that the absence of notice violated her due process rights. Doc. 189 at 81-82. In addition to the notice and due process argument, Duarte asserted that there had been no testimony to support the enhancement as presented in the Final Report. Doc. 189 at 83.

The court responded by asking Duarte if the evidence was sufficient to satisfy the definition of device-making equipment in § 2B1.1 Application Note 10(A) so that it would satisfy § 2B1.1(b)(11)(A)(i). Doc. 189 at 83–84. The court noted that the guideline term "device-making equipment" includes a "scanning receiver" referred to in 18 U.S.C. § 1029(e)(8) which, in turn,

defines the term "scanning receiver" to mean "'a device or apparatus that can be used to intercept a wire or electronic communication.'" Doc. 189 at 84 (quoting 18 U.S.C. § 1029(e)(8)). The court suggested that Agent Winn's testimony established that "the quote unquote skeleton key intercepted the transmission from the bank's servers to the ATM machine."[6] Doc. 189 at 84.

Counsel for Duarte candidly acknowledged that she was "completely unprepared to answer that question," and that she was "flying blind," apparently referring to the contention that the United States was relying on a different guidelines provision to support the enhancement. Doc. 189 at 84. But the court made clear that it was "going with what you were on notice about" in asking the question. Doc. 189 at 84. The court then answered its own question, stating, "I think it is," then explained that it was supported by the agent's testimony. Doc. 189 at 84–85.

The court acknowledged that Duarte should have gotten notice that the United States intended to rely on a different section of 2B1.1(b)(11), but

[6] The United States contends the district court misspoke here and referred to the skeleton key when it intended to refer to the Raspberry Pi. Agent Winn's testimony was very clear that a physical skeleton key unlocked the top half of the ATM machines and that the Raspberry Pi intercepted the transmission. Doc. 189 at 14-16.

also made clear that it was not relying on that provision, stating, "But even what you are on notice about, I do think the agent's testimony that it intercepted the wires, the communications between the bank server and the ATM machine, I think will qualify it under 18 U.S.C. § 1029(e)(8). I'm going to apply it and let you preserve the objection." Doc. 189 at 85.

Ultimately, the court accepted (1) the base offense level of seven, (2) the fourteen-level enhancement based on a loss amount of more than $550,000 but not more than $1,500,000, (3) the two-level specific offense characteristic enhancement for ten or more victims, (4) the two-level specific offense characteristic because a substantial part of the fraud was committed outside the United States, and (5) the two-level specific offense characteristic for use of device-making equipment. Doc. 189 at 95. The court then made a two-level reduction for minor role in the offense and a two-level reduction under Chapter Four as a zero-point offender. Doc. 189 at 95. The court denied Duarte a two-level reduction for acceptance of responsibility, which also eliminated an additional one-level reduction for entering a timely plea. Doc. 189 at 95-96.

The court's new determinations resulted in a total offense level of 23 which, with a criminal history category of I, resulted in an advisory guidelines sentencing range of 46 to 57 months' imprisonment. Doc. 189 at 95. The United States requested an upward variance of two levels, Doc. 189 at 96; Duarte requested a sentence of no longer than 24 months. Doc. 189 at 199. The court sentenced Duarte to the top of the new guidelines range and imposed a sentence of 57 months. Doc. 189 at 109. Duarte preserved an objection to the substantive reasonableness of the sentence, in addition to those already preserved. Doc. 189 at 110.

**B. Statement of the Standard of Review**

The sentencing guidelines are the "starting point and the initial benchmark" for determining a sentence and "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). An appellate court reviews the sentence under an abuse-of-discretion standard and "must first ensure that the district court committed no significant procedural error." *Id.* at 51. Significant procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory,

failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range. *Id.*

Where a defendant preserves a challenge to a sentencing enhancement, the Court reviews *de novo* the application of the sentencing guidelines and reviews the district court's findings of fact for clear error. *United States v. Louis*, 559 F.3d 1220, 1224 (11th Cir. 2009). "A factual finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

The Court "review[s] the substantive reasonableness of a sentence for abuse of discretion, considering the totality of the circumstances." *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023). *See Gall*, 552 U.S. at 41; *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008). The ultimate question in evaluating the substantive reasonableness of a sentence is simply whether "the § 3553(a) factors, on the whole, justif[y] the sentence." *Gall*, 552

U.S. at 59-60. As "[t]he party challenging the sentence," Duarte "bears the burden to show that [her] sentence is unreasonable considering the record and the § 3553(a) factors." *United States v. Melgen*, 967 F.3d 1250, 1264-65 (11th Cir. 2020).

## SUMMARY OF THE ARGUMENT

Prior to sentencing, Probation recommended, among other things, that Duarte receive a two-level enhancement because her offense of conviction—conspiracy to commit bank fraud—involved the possession or use of device-making equipment as set forth in U.S.S.G. § 2B1.1(b)(11)(A)(i). At the sentencing hearing, the United States maintained that Duarte's conduct merited the two-level enhancement, but argued that the court should apply U.S.S.G. § 2B1.1(b)(11)(B)(i), instead. The district court found that the use of Raspberry Pi mini computers to reroute network traffic between the ATMs and the targeted banks supported a two-level enhancement, but the district court applied the enhancement under U.S.S.G. § 2B1.1(b)(11)(A)(i)—the provision as to which Duarte received prior notice—and not U.S.S.G. § 2B1.1(b)(11)(B)(i). Because the district court applied the guideline provision as to which Duarte received prior notice, there was no due process

violation. And the determination to apply the two-level enhancement for possession or use of device-making equipment was supported by the testimonial evidence presented at sentencing as to how the Raspberry Pi device was used.

The 57-month sentence imposed by the district court was procedurally and substantively reasonable. The court did not rely on an illegal factor when it expressed concern that the proceeds of the bank thefts were going to Venezuela and the district court's reliance on the amount of money and the number of thefts undertaken was not improper. The district court properly weighed the relevant factors in deciding the sentence to impose.

## ARGUMENT AND CITATION OF AUTHORITY

Duarte identifies two arguments on appeal: (1) the district court erred in applying a guidelines enhancement for which she received no advance notice; and (2) her sentence was substantively unreasonable. Duarte has failed to satisfy her burden of showing error as to either claim.

### A. Duarte received sufficient notice of the two-level enhancement for possession or use of device-making equipment and the enhancement was supported by the evidence.

#### 1. Duarte received sufficient notice of the two-level enhancement for possession or use of device-making equipment.

On two separate grounds, Duarte challenges the two-level enhancement recommended by Probation because the offense involved the possession or use of device-making equipment: (1) lack of notice as to the basis for the enhancement, and (2) lack of factual support for its imposition. Neither ground has merit.

In recommending the two-level enhancement because the offense involved the possession or use of any device-making equipment, Probation relied on U.S.S.G. § 2B1.1(b)(11)(A)(i) and Application Note 10(A). Doc. 143 ¶ 28. Section 2B1.1(b)(11)(A)(i) provides: "If the offense involved (A) the possession or use of any (i) device-making equipment . . . increase by two levels." Application Note 10(A) defines "device-making equipment" as (i) having the meaning given that term in 18 U.S.C. § 1029(e)(6) and (ii) including

> (I) any hardware or software that has been configured as described in 18 U.S.C. § 1029(a)(9); and (II) a scanning receiver

> referred to in 18 U.S.C. § 1029(a)(8). "Scanning receiver" has the meaning given that term in 18 U.S.C. § 1029(e)(8).

U.S.S.G. § 2B1.1 cmt. n. 10(A).[7]

At the sentencing hearing, in applying § 2B1.1(b)(11)(A)(i) and the referenced commentary, the court reviewed 18 U.S.C. § 1029(e)(8). Doc. 189 at 83–84. That statute defines the term "scanning receiver" to mean "a device or apparatus that can be used to intercept a wire or electronic communication in violation of chapter 119[8] or to intercept an electronic serial number, mobile identification number, or other identifier of any telecommunications service, equipment, or instrument." 18 U.S.C. § 1029(e)(8). The court then found that the definition was consistent with Agent Winn's testimony about how The Engineer "intercepted the transmission from the bank's servers to the ATM machine." Doc. 189 at 84.

---

[7] Neither party in the district court raised the decision in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023), or addressed whether the portion of U.S.S.G. § 2B1.1(b)(11) relied on to determine Duarte's guidelines range was ambiguous or whether the district court should defer to the commentary in Application Note 10(a). Because the terms needed for determination of the relevant issues are terms of art, it is appropriate to consult the commentary definitions of those terms.

[8] Chapter 119 encompasses Wire and Electronic Communications Interception and Interception of Oral Communications, 18 U.S.C. §§ 2510 to 2523.

The court noted for Duarte's counsel that its reference to the definition in § 1029(e)(8), was consistent with what Probation had relied on in the Final Report to support the two-level enhancement. The court did not adopt the new position advanced by the Government at sentencing, instead explaining to Duarte's counsel: "I'm going with what you were on notice about." Doc. 189 at 84. The Court then asked counsel for Duarte whether that definition sufficed to satisfy the requirements for the enhancement. Doc. 189 at 84. Nevertheless, despite the fact that the district court posed a question to Duarte's counsel about a guideline provision specifically referenced in the Final Report, counsel responded that she was "unprepared to answer that question." Doc. 189 at 84.

In this Court, Duarte continues to assert that the district court imposed a two-level enhancement for possession or use of device-making equipment based on a guidelines provision that was raised for the first time by the United States at sentencing. Duarte Br. at 11-15.[9] But the district court told the parties that it was applying the two-level enhancement based on the

[9] References to Duarte's brief are to the software generated page numbers in the text, not the ecf-generated page numbers appearing at the top of the page.

guidelines provision that was put forth by Probation. Doc. 189 at 84–85. The court not only agreed with Duarte that she "should have gotten notice," but concluded that Agent Winn's testimony satisfied "even what you are on notice about." Doc. 189 at 85. As the court explained, "I do think the agent's testimony that it intercepted the wires, the communication between the bank server and the ATM machine, I think will qualify under 18 U.S.C. § 1029(e)(8)." Based on these findings, the court applied the enhancement. Doc. 189 at 85.

Contrary to Duarte's assertions in this Court, there was no due process violation. Duarte was on notice as early as the filing of the Revised Final Report (September 10, 2025) that the district court would consider a two-level enhancement for possession or use of device-making equipment as that term was defined in Application Note 10(A). Doc. 130 ¶ 28; Doc. 143 ¶ 28. Application Note 10(A) further defines device-making equipment by reference to 18 U.S.C. § 1029(e)(8), which is the definition the sentencing court ultimately relied on. Doc. 189 at 85.

Insofar as Duarte continues to challenge notice of the basis for the enhancement, Duarte acknowledges, Duarte Br. at 11, "the degree of due

process protection required at sentencing is only that which is necessary 'to ensure that the district court is sufficiently informed to enable it to exercise its sentencing discretion in an enlightened manner.'" *United States v. Plasencia*, 886 F.3d 1336, 1343 (11th Cir. 2018) (quoting *United States v. Stephens*, 699 F.2d 534, 537 (11th Cir. 1983)). Here, the Final Report put all parties on notice that Duarte might be subject to a two-level enhancement because her offense involved the possession or use of device-making equipment. Doc. 143 ¶ 28. Although the specific contours of that enhancement were still to be determined, this Court's decision in *Plasencia* establishes that the notice provided to Duarte was sufficient.

In *Plasencia*, the defendant argued that the district court violated his due process rights by imposing an obstruction of justice enhancement *sua sponte*, without adequate notice or opportunity to be heard. *Plasencia*, 886 F.3d at 1343. The Court disagreed, concluding that when "the circumstances afford a defendant notice that he engaged in conduct that may result in the application of a Guidelines enhancement, the court need not provide additional notice of its intention to apply the enhancement *sua sponte*—the Guidelines themselves provide adequate notice." *Id.* at 1344.

Here, the Final Report provided Duarte with notice that conduct imputed to her as a member of the conspiracy might result in a two-level enhancement under § 2B1.1(b)(11)(A)(i) and Application Note 10(A). After Agent Winn testified, the parties then set forth their positions as to how, if at all, that testimony supported the proposed enhancement. This process put Duarte on notice of what she needed to defend against, and ensured that the district court was "sufficiently informed to enable it to exercise its sentencing discretion in an enlightened manner." *Plasencia*, 886 F.3d at 1343. This was sufficient to satisfy Duarte's due process rights at sentencing.

**2. The district court did not err in applying the enhancement.**

While preserving her argument that she was deprived of due process, Duarte also argues that the evidence does not support the district court's decision to impose the two-level enhancement. Duarte Br. at 15–16. But here, again, Duarte proceeds on the mistaken belief that the district court adopted the United States' argument and applied U.S.S.G. § 2B1.1(b)(11)(B)(i). Duarte Br. at 15-16. Contrary to her assertions in the brief, the district court did not

apply the enhancement based on a finding that the Raspberry Pi was capable of being used as a skimmer.[10] Duarte Br. at 15.

As discussed above, the Final Report relied on § 2B1.1(b)(11)(A)(i) and Application Note 10(A). Doc. 143 at 28. Application Note 10(A), defines device-making equipment to include a scanning receiver as that term is used in 18 U.S.C. § 1029(e)(8). U.S.S.G. § 2B1.1(b)(11)(A)(i) cmt. n.10(A). The district court first discussed Application Note 10(A), referencing Roman numeral II, and then quoted § 1029(e)(8), stating, "That term says, 'The term "scanning receiver" means a device or apparatus that can be used to intercept a wire or electronic communication.'" Doc. 189 at 84 (quoting 18 U.S.C. § 1029(e)(8)). The court then inquired of counsel for Duarte as to whether she agreed that Agent Winn's testimony satisfied that definition. Doc. 189 at 84. Later, the court again referenced § 1029(e)(8) when it applied the enhancement, stating, "But even what you are on notice about, I do think the agent's testimony that it intercepted the wires, the communication

---

[10] The United States continues to be of the opinion that Agent Winn's testimony supports a theory that the Raspberry Pi was capable of being used as a skimmer, *see* Doc. 189 at 31–33, and that testimony would support the enhancement, but there is no reason for the Court to reach that issue because the district court did not apply the enhancement on that basis.

between the bank server and the ATM machine, I think will qualify under 18 U.S.C., 1029(e)(8)." Doc. 189 at 85.

And the district court's finding was correct: Agent Winn's testimony established that, with the aid of a Wi-Fi hotspot, the Raspberry Pi could be used to intercept a wire or electronic communication. As Agent Winn explained, when the financial institution's messaging traffic would attempt to deny the fraudulent transactions by sending a denial message to the ATM, "the Raspberry Pi would intercept that message, and The Engineer would hack the system to change the message to an approval message." Doc. 189 at 31. As the district court found, Agent Winn's testimony was sufficient to show that the offense involved a scanning receiver, as that term is defined in § 1029(e)(8), which, in turn, is included within the definition of device-making equipment as that term is used in U.S.S.G. § 2B1.1(b)(11)(A)(i). The district court correctly applied the two-level enhancement.

**B. Duarte has failed to show that the 57-month sentence imposed by the district court was procedurally or substantively unreasonable.**

In addition to challenging the district court's decision to give her a two-level enhancement because the offense involved device-making equipment, Duarte maintains the district court erred in imposing the

57-month sentence, at the high end of the calculated guidelines range. Duarte Br. at 17-21. Duarte points to two reasons she believes the sentence was unreasonable: the court placed too much weight on the amount of money and number of thefts involved, and the court improperly considered that The Engineer was Venezuelan and improperly questioned how that money might have been used in Venezuela. Duarte Br. at 18-19. But the court properly weighed the 18 U.S.C. § 3553(a) factors and imposed a procedurally and substantively reasonable sentence.

**1. The court did not improperly rely on the amount of money and number of thefts involved and properly considered other factors in deciding the sentence to impose.**

First, the court looked at the nature and circumstances of the offense. The court noted that Duarte and her co-conspirators were responsible for stealing $1.45 million from small credit unions and small banks. Doc. 189 at 107. The court pointed out that the jackpotting crew tried to steal money forty-five times and they were successful twenty-eight times. Doc. 189 at 107. The court described the crew's actions as "brazen," "cold," and" calculated" and stressed that their actions hurt real people. Doc. 189 at 107.

In describing the number of attempts and the types of financial institutions selected, the court was talking about more than just money; it was also talking about how many victims there were, the manner in which the financial institutions were selected, and the effect that each theft had beyond the amount of money taken. As the court noted, the victims were small banks in small towns, and the effect of those thefts was likely to be felt more keenly in the small communities serviced by those financial institutions. These were all proper considerations by the court. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

The court was right to give weight to the amount of money involved, but in deciding the sentence to impose, the court's considerations went beyond the amount of money taken. Duarte has failed to show error in the court's weighing of the relevant factors. "[T]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court," and this Court does not substitute its judgment in weighing

the relevant factors. *United States v. Kuhlman*, 711 F.3d 1321, 1327 (11th Cir. 2013). The amount of money taken and the number of thefts in which Duarte was a conspirator was a proper factor for consideration in determining Duarte's sentence and, insofar as the district court gave those factors more weight than the other factors it considered, the court properly exercised its sentencing discretion.

**2. The question of where the stolen money went and how it was used was a proper consideration for the district court.**

The court also noted that the leader of the crew was a Venezuelan, stating that "the country that did it . . . targeted us." Doc. 189 at 107–08. The court was bothered by the idea that the stolen money went to Venezuela and questioned how the money might have been used once in Venezuela: "And Lord knows where that money went when it got back to Venezuela, what it did to people in Venezuela, of [sic] how it hurt them." Doc. 189 at 107. The court took that into consideration, but also took other factors into consideration, for example, that during the course of the conspiracy, Duarte lived well and reaped the benefits of a large and profitable conspiracy. Doc. 189 at 107–08.

The court also considered other factors raised by Duarte in her sentencing memorandum. In the memorandum, Duarte suggested that the court should consider that she would be deported, which, she contended, made her a minimal risk for reoffending. USCA11 Doc. 16 at 14-15. The court told Duarte that it was unpersuaded by her suggestion that the court should fashion a lower sentence because of her likely deportation. Doc. 189 at 108. Instead, the court found that Duarte took advantage of her status "by stealing from us." Doc. 189 at 108. The court expressed that Duarte's purposeful decision to overstay her visa and use her time in the country "by stealing from us" should be "taken into account" in deciding the sentence to impose. Doc. 189 at 108.

Despite numerous factors that were before the court when weighing what sentence to impose, Duarte focuses on the district court's reference to the Venezuelan connection and contends it was an improper factor for the court to consider. Duarte Br. at 19. If the district court had been sentencing a Venezuelan citizen and had imposed a higher sentence because of that defendant's nationality, that would be an improper sentence. *See United States v. Davis*, 204 F.3d 1064, 1066 (11th Cir. 1999) ("If a factor is forbidden,

*e.g.* race, sex, national origin, creed, religion and socio-economic status, a district court cannot use it to depart from the applicable guideline."). But that is not what happened here.

When the court was sentencing Duarte, a Columbian citizen, it remarked on the fact that a significant amount of the money went to Venezuela and speculated on how that money might have been used, including to the disadvantage of some of the people in Venezuela. Doc. 189 at 107. The court did not sentence Duarte on the basis of her nationality. Rather the court properly considered the potential effects of Duarte's conduct on other people. *See* 18 U.S.C. § 3553(a)(1) (directing sentencing court's to consider "the nature and circumstances of the offense"). The district court's concern was that Duarte, in her blind willingness to assist her boyfriend, Villamizar, had done serious damage even beyond the actual loss of money to the financial institutions, and beyond the potential damage to the communities in which those financial institutions were located. This was a legitimate factor for the court's consideration as it speaks to Duarte's history and characteristics, 18 U.S.C. § 3553(a)(1), and the need for the sentence imposed to reflect the seriousness of the offense, 18 U.S.C.

§ 3553(a)(2)(A). The district court did what Duarte failed to do: consider the far-reaching implications of the criminal conduct in which she was participating.

Duarte also suggests that, in addition to giving too much weight to the amount of money taken and where the money went, the court gave too little weight to other factors entitled to consideration. Duarte Br. at 20. But the court gave those factors consideration, it just found them unpersuasive.

For example, Duarte offered various reasons in her sentencing memorandum for her request of time served: that she only participated because she was "lured into the scheme by her then-boyfriend" Villamizar, USCA11 Doc. 16 at 82–83, 94–95; her minimal role in the offense, *id.* at 82–83, 93; the fact that her son died unexpectedly while she was incarcerated and she could not attend his funeral, *id.* at 95; and she will be detained in an ICE facility, that is likely to be harsher and more restrictive than a Bureau of Prisons facility and will likely make her ineligible for a halfway house, *id.* at 96–97. The court considered these arguments but found that none of the reasons set forth in the sentencing memorandum supported a more favorable sentence. Doc. 189 at 108.

Throughout the lengthy sentencing hearing, the court identified numerous factors that supported a sentence at the top of the guidelines. Of particular significance here, in deciding to withdraw acceptance of responsibility, the court found that Duarte denied being at the scene of one of the jackpotting crimes, despite photo evidence showing she was there, and tried to persuade the court that the woman in the photo was one of the co-conspirators. Doc. 189 at 40, 93, 95. The court also denied acceptance because Duarte disclaimed taking any cash despite ledger records on her phone showing that she got paid some money. Doc. 189 at 95. Although the court did not explicitly mention these incidents when it announced the 57-month sentence, it is clear from the record that they played a role in the district court's determination of the sentence to impose.

The record shows that the court carefully considered all of the circumstances of Duarte's offense and, in doing so, concluded that a within-guidelines sentence was appropriate, but that certain conduct demanded a sentence at the high end of the range. The court did not consider any impermissible factors and, after weighing all of them, selected a reasonable sentence supported by the evidence. No error has been shown.

## CONCLUSION

The United States respectfully submits that this Court should affirm the judgment of the district court.

This the 20th day of April, 2026.

WILLIAM R. KEYES
UNITED STATES ATTORNEY

By: s/Michelle L. Schieber
Assistant United States Attorney
Georgia Bar No. 629188

300 Mulberry St., Suite 400
P. O. Box 1702
Macon, Georgia 31202
(478) 752-3511
mikki.schieber@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 7423 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4.

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). Using the Microsoft Word 365 software program, this document has been prepared using a proportionally spaced typeface in 14-point characters in Book Antiqua font.

This the 20th day of April, 2026.

By: s/Michelle L. Schieber
Assistant United States Attorney
Georgia Bar No. 629188

300 Mulberry St., Suite 400
P. O. Box 1702
Macon, Georgia 31202
(478) 752-3511
mikki.schieber@usdoj.gov

## CERTIFICATE OF SERVICE

I do hereby certify that I electronically filed the within and foregoing Brief of Appellee with the Clerk of the Court using the Eleventh Circuit's CM/ECF system, which will send electronic notification of filing to counsel of record for Appellant. Consistent with Eleventh Circuit Rule 31-3, paper copies will be dispatched as directed by the clerk at the conclusion of briefing.

This the 20th day of April, 2026.

By: s/Michelle L. Schieber
Assistant United States Attorney
Georgia Bar No. 629188

300 Mulberry St., Suite 400
P. O. Box 1702
Macon, Georgia 31202
(478) 752-3511
mikki.schieber@usdoj.gov