**No. 25-13489-BB**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

________________

**UNITED STATES OF AMERICA,**
***Appellee,***
**v.**
**KAROL TELLEZ DUARTE,**
***Appellant.***

---

On appeal from the United States District Court
For the Middle District of Georgia
No. 3:24-cr-35-TES-CHW

---

# REPLY OF APPELLANT KAROL TELLEZ DUARTE

---

Lynsey M. Barron
Ga. Bar No. 661005
BARRON WARD LLC
1800 Peachtree Rd. NE, Ste. 300
Atlanta, GA 30309
(404) 857-2282

*Counsel for Appellant Karol Tellez Duarte*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rule 26.1-1 to 26.1-3, Appellant states that the following people and entities have an interest in the outcome of this appeal:

1. Barron, Lynsey M., counsel for Appellant
2. Barrow, Charles – Attorney for Codefendant
3. Booker, C. Shanelle – former Acting U.S. Attorney
4. Brant, Charles Tyrone – Attorney for Codefendant
5. Camacho, Guillermo Jose Tovar – Codefendant
6. Campo-Paz, Karen A. – Codefendant
7. Conway, Byron L., Jr. – Ex. Dir., Federal Defender Program
8. Duarte, Karol Tellez – Defendant/Appellant
9. Gantt, E. Addison – Attorney for Codefendant
10. Keyes, William R. – U.S. Attorney
11. Leary, Peter D. – former U.S. Attorney
12. Lopez, Ricardo Ramon Rangel – Codefendant
13. Mendelsohn, Brian – Attorney for Codefendant
14. Morrill, Michael – Assistant U.S. Attorney
15. Morrison, Michael, Assistant U.S. Attorney

16. Rangel-Ochoa, Brayan Delexandero – Codefendant
17. Sanchez-Quintana, Carlos Alberto – Codefendant
18. Scheiber, Michelle L. – Assistant U.S. Attorney
19. Self, Hon. Tillman E., III – U.S. District Judge
20. Vasquez, Juanileidys Ochoa – Codefendant
21. Villamizar, Keyderman Jose Blanco – Codefendant
22. Villarroel, Douglas Rondon – Codefendant
23. United States of America – Appellee
24. Weigle, Hon. Charles H. – U.S. Magistrate Judge
25. Victim institutions:

    a. Adirondack Regional Federal Credit Union
    b. North Georgia Credit Union
    c. Norstate Federal Credit Union
    d. Educational Systems Federal Credit Union
    e. Andover Bank (ANDC)
    f. Five County Credit Union
    g. Penn East Federal Credit Union
    h. Del-One Federal Credit Union
    i. Shore United Bank (traded as Shore Bancshares, Inc.) (SHBI)

j. Erie Federal Credit Union

k. Pendleton Community Bank (PCB)

l. Park View Federal Credit Union

m. United Community Bank (UCB)

n. First People's Community Federal Credit Union

o. Saco & Biddeford Savings

p. Thomaston Savings Bank

q. Union Bank

The Appellant is currently incarcerated.

# TABLE OF CONTENTS

Certificate of Interested Persons .......... C-1

Table of Contents .......... **Error! Bookmark not defined.**

Table of Authorities .......... ii

Reply of Appellant Karol Tellez Duarte .......... 1

I. The Government's Response to Ms. Duarte's Challenge to the Access Device Enhancement Weds the Government to a Position Completely Unsupported by the Record .......... 1

II. The Government Failed to Acknowledge that the Court Gave Significant Weight to a Factor that Was Not Supported by Any Evidence and that Was Improper .......... 6

Certificate of Compliance .......... 10

Certificate of Service .......... 11

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*National Cable & Telecommunications Ass'n v. Brand X Internet Services, et al.*,
545 U.S. 967 (2005) ........ 5
*United States v. Davis*,
204 F.3d 1064 (11th Cir. 1999) ........ 7, 8
*United States v. Irey*,
612 F.3d 1160 (11th Cir. 2010). ........ 9
*United States v. Plasencia*,
886 F.3d 1336 (11th Cir. 2018). ........ 3

## Statutes

18 U.S.C. § 1029 ........ *passim*
47 U.S.C. § 153 ........ 5

## Rules

Eleventh Circuit Rule 32-4 ........ 22
Fed. R. App. P. 32 ........ 22
USSG § 2B1.1 ........ *passim*

# REPLY OF APPELLANT KAROL TELLEZ DUARTE

## I. The Government's Response to Ms. Duarte's Challenge to the Access Device Enhancement Weds the Government to a Position Completely Unsupported by the Record.

The government's response is tethered to a factually inaccurate understanding of the proceedings below and the evidence in the record. The starting point is the PSR, which gave Ms. Duarte notice that she would have to be prepared to argue whether USSG § 2B1.1(b)(11)(A)(i) applied to her case under a theory that the offense involved "any device-making equipment, which includes any hardware or software configured as described in 18 U.S.C. § 1029(a)(9)." (PSR ¶ 28.) The government did not file any objections, nor did it put forth an alternate basis for applying the enhancement.

At sentencing, though, the government claimed that the PSR had made an error and that the enhancement applies under USSG § 2B1.1(b)(11)(B) instead of USSG § 2B1.1(b)(11)(A)(i). (Dkt. 189 at 79-82.) Ms. Duarte immediately raised due process concerns should the court enhance her sentence on the basis of a Guideline for which she was not given advance notice. (*Id.* at 82.) The district court agreed that there would be a due process issue if it relied on the government's proposed Guideline instead of the one noticed in the PSR. (*Id.* at 84.) The court agreed to look only to whether USSG § 2B1.1(b)(11)(A)(i) applied. (*See id.*)

What the court did not appreciate—and what the government completely ignores—is that there are two options for deciding whether the "device-making equipment" enhancement under USSG § 2B1.1(b)(11)(A)(i) applies, and the PSR only gave notice that one of them was supported here. The Guideline itself does not define "device-making equipment," but the commentary offers clarification. It cross-references the definition given in the access device fraud statute, 18 U.S.C. § 1029(a)(9), offering two options: (1) "any hardware or software configured as described in 18 U.S.C. § 1029(a)(9)"—which is the option outlined in the PSR—or (2) "a scanning receiver referred to in 18 U.S.C. § 1029(a)(8)." USSG § 2B1.1(b)(11)(A)(i) cmt. n. 10(A). The government does not dispute that the PSR applied the enhancement based on the first option, nor does it dispute that it neither objected to application of the enhancement on that basis nor suggested that the Guideline was equally applicable under the second option.

When the court began to discuss the second option—"scanning receiver"—undersigned counsel was "completely unprepared" to answer the court's question of whether the enhancement could still apply under that definition because that was not the option considered by the PSR. (*See id.*) She had no reason to believe anyone would be arguing that the Raspberry Pi was a scanning receiver going into the sentencing hearing. Indeed, nothing in the discovery showed that it could function as a card

skimmer and undersigned counsel did not learn that fact *at all* until the case agent testified at sentencing.

For this reason, the government's *Plasencia* argument fails. (*See* App. Dkt. 21 at 26-27.) Relying on that case to challenge Ms. Duarte's due process argument, the government claims that an enhancement is properly applied even without explicit notice "when 'the circumstances afford a defendant notice that he engaged in conduct that may result in the application of a Guidelines enhancement.'" (App. Dkt. 21 at 26 (quoting *United States v. Plasencia*, 886 F.3d 1336, 1343-44 (11th Cir. 2018)).) In *Plasencia,* the defendant's sentence was enhanced based on his own conduct in suborning perjury, and the court held that he was certainly on notice of his own conduct. *See Plasencia*, 886 F.3d at 1344. By contrast here, there was no evidence that Ms. Duarte ever used the Raspberry Pi device, much less understood how it worked from a technical perspective sufficient to know whether it also could be used as a credit card skimmer.

But there was no evidence that the Raspberry Pi device[1] could function as a "scanning receiver" until sentencing, so she could not possibly have been on notice that a device she never even used had that technological ability. The government also

---

[1] The government's footnote 5 is utterly improper. Only facts that have been made part of the record should be considered on appeal.

claims that the testimony about the use of the Raspberry Pi "with the aid of a Wi-Fi hotspot" could intercept wire communication. And as Ms. Duarte stated in her opening brief, there was nothing in the discovery that put her on notice that Wi-Fi hotspot was used either. It was not until the agent took the stand at sentencing that the intricacies of any of the communication interception was made known to her. The government does not address that lack of notice *at all*.

The court nonetheless was persuaded that the enhancement applied as a scanning receiver, but as a backstop it found that the enhancement applies anyway based on the agent's testimony that the device intercepts wire communications between a bank server and the ATM machine. (Dkt. 189 at 84-85.) The government latches on to this finding in its response to say that Ms. Duarte was on sufficient notice because that finding ties back to the definition of "device making equipment" that was outlined in the PSR—hardware or software configured as described in 18 U.S.C. § 1029(a)(9). (App. Dkt. 21 at 25.)

The problem for the government is that, if the district court found that the intercepting of wire communication was a legitimate basis for the enhancement, then the court erred for the exact reason raised in Ms. Duarte's sentencing memorandum and in her opening brief, to which the government still has not responded. For the Raspberry Pi device to qualify as "hardware or software configured as described in 18

U.S.C. § 1029(a)(9)," *see* USSG § 2B1.1(b)(11)(A)(i), it would have be "configured to insert or modify telecommunication identifying information associated with or contained in a telecommunications instrument so that such instrument may be used to obtain telecommunications service without authorization." *See* 18 U.S.C. § 1029(a)(9). That statute references the Communications Act of 1934, 47 U.S.C. § 153, to define "telecommunications service." 18 U.S.C. § 1029(e)(9). There, we find the term defined as "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available to the public, regardless of the facilities used." 47 U.S.C. § 153(53). Providers of "telecommunications service" are subject to common-carrier regulation and other highly regulated aspects of consumer communication. *See National Cable & Telecommunications Ass'n v. Brand X Internet Services, et al.*, 545 U.S. 967, 973-75 (2005).

The court found that the Raspberry Pi intercepted wire communications between the ATM and the bank. Fair enough. But to find that it meets the definition in 18 U.S.C. § 1029(a)(9), the court had to find that it intercepted not just wire communications, but ***tele***communications. As Ms. Duarte preempted in her sentencing memorandum, nothing in the agent's testimony about how the Raspberry Pi device worked could possibly support an inference that it obtained "telecommunications service." There is no communications service offered to the public for a fee that the device was

attempting to obtain. As the agent testified, it "intercept[s] traffic between the ATM and the financial institution's server" (Dkt. 189 at 16), not telecommunications services available to the public.

The government is caught between the Scylla and Charybdis. If the court applied the enhancement on any ground other than the explicit ground stated in the PSR but that became applicable due to the agent's testimony, the due process problem Ms. Duarte identified stands. If, on the other hand, the court applied the enhancement on the ground that the Raspberry Pi device intercepted wire communication between ATM's and bank servers, it fails to meet the legal requirements of the enhancement for which Ms. Duarte was given notice. Either way, the district court erred.

## II. The Government Failed to Acknowledge that the Court Gave Significant Weight to a Factor that Was Not Supported by Any Evidence and that Was Improper.

The government tried to mitigate the significant weight the district court gave to the fact that a large portion of the proceeds of the conspiracy went to a crew member in Venezuela by pointing to the "other factors [the court took] into consideration." (App. Dkt. 21 at 32.) Ms. Duarte takes the court at its word and does not doubt that it considered several factors. But what the government cannot overcome is that the district court gave weight to a factor that not only was not supported by any evidence, but that was an improper factor to consider *at all*.

The district court was very clear that "something you've got to take into account" was the fact that money from the scheme went to an individual in Venezuela, and the court speculated what horrors were then perpetrated in Venezuela using that money. (Dkt. 189 at 107-08.) But there was absolutely *no* evidence in the record to support any inference that the mere fact that the money was sent to someone in Venezuela—as opposed to, say, France or Ireland—meant that the money was then used to wreak havoc and "hurt" people.

The government concedes that it would have been improper for a sentencing court to consider a defendant's nationality when imposing a sentence. (App. Dkt. 21 at 33-34 (citing *United States v. Davis*, 204 F.3d 1064, 1066 (11th Cir. 1999)).) The government further concedes that the court "speculated on how that money might have been used," rightly acknowledging that there was absolutely no evidence that the money was used to cause harm simply because it went to someone who happens to be Venezuelan. (*See id.* at 34.) But then the government interjects a supposition completely unsupported by the district court's comments: That what the court *really* meant by expressing its concern about the money finding its way to Venezuela was that "was that Duarte, in her blind willingness to assist her boyfriend, Villamizar, had done serious damage even beyond the actual loss of money to the financial

institutions, and beyond the potential damage to the communities in which those financial institutions were located." (*Id.*)

Ms. Duarte appreciates the government's attempt to salvage the issue by recasting the district court's comments, but unfortunately the government's spin is flatly contradicted by the court's actual words. "[I]t's not lost on me the country that did it, the country that targeted us. And Lord knows where that money went when it got back into Venezuela, what it did to people in Venezuela, of how it hurt them." (Dkt. 189 at 107-08.) The court was not expressing its concern about the "communities in which [the] financial institutions were located," as the government claims. It was drawing attention to the country itself, Venezuela—a country that has been considered such a hotbed of corruption and terrorism that it has been the target of U.S. sanctions—and making assumptions about what evils were perpetrated with the proceeds of the fraud charged in the indictment. While it was not Ms. Duarte's nationality that the court considered, it nonetheless considered the nationality of her coconspirator in deciding that she deserved a sentence at the high end of the Guidelines range. This was error. *See Davis*, 204 F.3d at 1066 (11th Cir. 1999) (noting that nationality is a "forbidden" factor in the court's calculation of a reasonable sentence).

The district court gave significant weight to an improper factor, rendering Ms. Duarte's sentence substantively unreasonable. *See United States v. Irey*, 612 F.3d 1160, 1189, 1193 (11th Cir. 2010).

Respectfully submitted,

***s/ Lynsey M. Barron***
Lynsey M. Barron

*Attorney for Appellant Karol Tellez Duarte*

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable type-volume limitation under Rule 32(a)(7) of the Federal Rules of Appellate Procedure and 11th Circuit Rule 32-4. According to the word count in Microsoft Word 2010, the relevant parts of this brief contain 1950 words. This brief complies with the applicable type-style requirements limitation under Rule 32 of the Federal Rules of Appellate Procedure. I prepared this brief in a proportionally spaced Goudy Old Style 14-point font or, for headings, with a larger point size.

*s/ Lynsey M. Barron*
Lynsey M. Barron

*Attorney for Appellant Karol Tellez Duarte*

## CERTIFICATE OF SERVICE

On May 8, 2026, I e-filed this brief with the Court via CM-ECF, which will serve all attorneys of record.

s/ *Lynsey M. Barron*
*Lynsey M. Barron*

*Attorney for Appellant Karol Tellez Duarte*